Our final case of the day is Wolvin v. O'Malley. Ms. Marcus. Good morning. May it please the Court, Meredith Marcus on behalf of the appellant Edward Wolvin. Social Security Rule SSR 16-3 contains a two-step process for evaluating subjective symptoms. Judge Malloy in this case never should have moved on to the second prong of that analysis because first step one was satisfied under the substantial evidence burden. At the first step, the consideration is whether the claimant has a medically determinable impairment that should reasonably be expected to produce the symptoms alleged and the judge is to look at signs or laboratory findings such as MRI results. Under the language of SSR 16-3P, one is not to consider the severity of symptoms and the ruling also goes on to state we will not evaluate an individual's symptoms based solely on reports of finding that the individual is disabled. In other words, the intensity and persistence in this case never needed to be considered because in terms of the objective evidence, it was satisfied and we know this because no less than five specialists in this case said so. Dr. Lorber at the hearing stated that the MRI showed a significant pathology that could not be ignored. Dr. Julian Freeman authored a report and in that report, he wrote that the MRI imaging not only provided the diagnosis but also the explanation for the severity of symptoms despite the fact that there was normal clinical findings. Dr. Hagendorn, Wolven's treater, twice authored opinion reports and in terms of the objective evidence pointed to the MRI as rationale for those limitations. Drs. Carter and Keene earlier in the records pointed to the disc degeneration and stated that that could be a source of the pain. And then Wolven was also sent for a discogram which is used to evaluate back pain and it reproduced back pain at all of the levels in which he had disc herniation. So not only did Judge Molloy violate this first step, but then he moved on to the second prong of SSR 16-3P and created an even higher burden for Wolven to meet of this entirely consistent requirement in terms of intensity and persistence that's nowhere listed in Social Policy CFR 404-1527, I'm sorry, 1529C. The judge then evaluated only four rationale in terms of rejecting Wolven's symptoms. The first was pointing to the normal clinical findings. However earlier in the decision at the record at 1698, Judge Molloy points to a whole wide range of abnormal findings, never building that bridge between why the normal findings in this case should outweigh the abnormal ones. Further, as just stated, Dr. Lorber and Dr. Freeman both explained that the MRI findings in this case explain the fact that at times there were normal clinical findings. And Dr. Lorber in the hearing was asked about these normal clinical findings and he provides an explanation. He explains that listing 1.15, that's step three of the process, cannot be satisfied because Wolven didn't consistently have abnormal findings throughout the record, but he had enough abnormal findings along with the severity of the MRI findings to support that Wolven could not work. This leaves daily activities, which in this case the judge pointed broadly to exhibit 11E and 13E, and pointed to minimal daily activities without any consideration for the fact that those activities were done with Wolven needing to sit, stand, walk, most importantly take breaks and lie down. This court has held that without some attempt by the judge to explore the supposed contradictions here, they do not provide a sound basis for concluding that Wolven's report was inaccurate. The third rationale that the judge used, that the treatment here was not entirely consistent with that of a totally disabled individual. But again, at the record at 1698, the judge goes through physical therapy, occupational therapy, aqua therapy, injection therapy, home exercises, TENS unit, opiate pain medication, narcotic pain medication, that he was not a surgical candidate and that even with all of these heavy pain medications, he was still experiencing breakthrough pain. So it leaves the question of what in this case is lacking that Wolven does not have the treatment that would be required of a totally disabled individual. The only other rationale that the judge points to is that Wolven is in no acute distress throughout the record and that he is agile in times getting up and down from the floor. But again, Dr. Lorber in the hearing was confronted with all of this evidence and specifically stated that it would not alter his opinion. And notably, no one in this case is claiming that Wolven cannot get up and down from the floor. What's clear is that throughout this record, throughout an eight-year span, Wolven was lying down in medical appointments and at home to alleviate back pain in addition to all the other treatments that the doctors had offered. But the ALJ, in the opinion, addressed this evidence and noted, for example, the laying down that there was contradictory evidence that when somebody came in the room, he was able to get up quickly, jumped right up, inconsistent with somebody who would be in such pain. It sounds to me like you were asking us to re-weigh what the ALJ did. I'm not asking for re-weighing of what the ALJ did. I think what the judge did is essentially play doctor and put his opinion as to this. But in making these determinations, the ALJ looked at the medical records, looked at the consulting physicians, and didn't just say, oh, I'm taking this person's opinion over this doctor's opinion. The ALJ said, I am not giving as much weight to this doctor's because here's all this contradictory evidence in the record. So Dr. Lorber addresses this at the hearing and states that it could be a method utilized to alleviate back pain. So he is confronted with the fact that that woman was lying down. But again, in all the records that he has observed to be lying down and coming up in an agile nature, they're not questioning whether he's malingering, whether he's doing that to show vote. They're prescribing even heavier narcotics. They don't need to question that in order for the ALJ to read the assessment and decide to give it less weight given the facts that are clearly set forth in the medical records. It sounds like you're saying, oh, because these are the treating physicians and there are several of them, that the ALJ erred by not accepting their medical opinions. So it's not the treating physicians. It's Dr. Horrigan-Dorn would be the only one. Dr. Freeman was hired by Wolven to review the record and reviewed the evidence of him getting up and getting down. But Dr. Lorber is an independent medical expert who was called by the agency to review this record and still didn't find the fact that he was getting up and down persuasive. It sounds like you're arguing that the ALJ has to accept these opinions without looking at other medical evidence in the record, which the ALJ did a pretty thorough job of reviewing. So the judge might have done a thorough job of laying out the evidence on one hand and the other, but never in explaining and building that bridge of why one outweighed the other. Particularly the fact that the doctor was confronted with this evidence. But even if we don't credit the fact that Wolven needs to lie down, which clearly Dr. Lorber didn't, I mean, his testimony says that he might not need to lie down, he still found that he couldn't perform a full range of sedentary work. And Dr. Freeman still found that he couldn't perform a full range of sedentary work. So even if the need to lie down is not supported in this record, although I would argue with that because his own pain management doctor, Dr. Hagendorn, makes reference to the fact that he's more comfortable in this appointment, but there's times where he's in disabling pain or back spasms and can't get up off the ground, that this rationale on its own shouldn't be a reason to reject multiple different treating providers who found still that he couldn't work, maybe that he didn't need to lie down. You know, it's a tough dance because we do have this requirement that a logical bridge be built. But we've also said where an ALJ thoroughly and, you know, in detail describes all the medical evidence, that's enough to support the ALJ's ultimate conclusions about, you So, you know, we have these two strains we have to be faithful to, so how does that help us see things the way you want us to see them? I think because in this case, and the judge never mentions it in his decision, he focuses heavily on these normal clinical findings, which you have two doctors... But he mentions all the abnormal findings, too. You say he focuses on the normal, but that's after he's laid out everything, which includes the abnormal findings. Right. But he never mentions, and particularly, I would say, with evaluating Dr. Freeman, which he rejects purely based on the basis of the normal clinical findings, that this doctor, who's a neurologist, so another specialist, explains that in his report and says that the MRI findings on their own explain not only the diagnosis, but the severity of symptoms despite the normal clinical findings. And never in this decision does the judge explain, then, why these normal clinical findings outweigh the abnormal ones, where you have doctors specifically stating this is enough, because this shows how severe the symptoms are. Thank you, Ms. Roberts. Mr. Neltner. May it please the court, my name is Andrew Neltner, and I represent the Commissioner of the Social Security Administration. This case really does just come down to how the ALJ weighed the evidence. There's this bucket of evidence that the ALJ found particularly persuasive. The ALJ talks about the normal clinical findings. The ALJ talks about the ease with which Wolven got up from off the floor. The ALJ talks about the lack of acute distress despite the severe claims of pain. That evidence is at the core of this decision, and it is what the ALJ goes back to time and time again to question some of the more serious findings in the records, or some of the more serious opinions in the record. How do you respond to Mr. Wolven's argument that the ALJ failed to address the evidence that Mr. Wolven didn't respond well to medication? I think that you can – first off, I would say that the ALJ did not specifically winnow down and say, okay, this is how I'm going to address that piece of evidence. But I think it's clear when you read the decision as a whole. The ALJ thought that Wolven had some very severe functional restrictions. The ALJ didn't sort of give short shrift to this type of evidence that Wolven was not responding to treatment. In fact, he found that Wolven was restricted to sedentary work. If the ALJ had thrown all of this stuff out, he would have found that Wolven was much more capable than he did. And I think that's clear evidence that the ALJ was considering the weight of all of the evidence that was presented. The medical evidence found that Wolven would have a problem with frequent lifting, you know, frequency. And so where do you see the ALJ addressing how the sedentary work limitation accommodates – sedentary work finding accommodates a frequency of lifting problem that Wolven has, as opposed to sedentary work by definition involves lifting no more than 10 pounds? Well, that's weight. That's not frequency. So where did the ALJ address this – that particular limitation? I don't think that the ALJ addressed that specific restriction. But I also think that – or I'm positive that the ALJ never said that he was adopting that restriction. There were a couple of doctors that did talk about a need to limit the frequency of lifting. But the ALJ concluded that the restriction to sedentary work with the lower weight limitation was adequate to address what he thought were Wolven's restrictions. So pointedly, the ALJ did not specifically address the frequency issue. But the ALJ clearly was aware of all this evidence in the myriad opinions that were not quite all over the map, but that had different levels of functionality found by the different doctors throughout the record. So the ALJ had to take all this evidence and sort of reach a conclusion as to, okay, what do I think Wolven is actually capable of? And I think there's more than sufficient evidence cited by the ALJ in the record throughout that supports that finding. Again, there were 17 instances where Wolven was found to be not in distress, eight instances in the record where he had normal gait. There were 14 instances with a negative straight leg test, 12 times he could walk on heels and toes and do deep knee bends, 15 times where he had normal strength, sensation, balance. And then there are the four instances where he got up off of the floor and the doctors made specific notes of his ability to do so. This is substantial evidence in support of the ALJ's residual functional capacity assessment. This court has looked at this specific type of evidence in other cases, specifically in Bakke and Prill, both be Kijikazi, which are cited by the commissioner in his brief, that this court saw ALJs relying on this type of evidence in cases where there were back impairments and found that that evidence or cited that evidence with approval in terms of the ALJ supporting his or her decision in those cases. Let me ask you about another functional issue, the twisting and bending. I mean, are we clear on this record whether the ALJ adopted that limitation or not? Where do you see that adopted that limitation in the context of the sedentary work finding? So in terms of the twisting and bending, the ALJ mentioned multiple times, I believe three times, that the restriction to sedentary work would accommodate any postural restrictions that the ALJ found that Wolven had. Is that how you read this? The ALJ says postural limitations do not typically erode the occupational base for sedentary, unskilled work? That is how I read it, Your Honor. That regulation is saying if you have postural limitations and you are restricted to sedentary work, you don't really have to address the postural limitations because it's addressed inside the restriction to sedentary work. So if someone has postural limitations and they're restricted to sedentary work, you don't really need to worry about the postural limitations because it's already addressed. Isn't it odd for a person like Wolven who had problems both sitting and standing for prolonged periods of time, how can one say you don't have to worry about postural limitations if you're sitting down, when he has problems sitting down for too long? Do you see what I'm saying? I see what you're saying, but I don't think the ALJ was saying that you don't have to worry about the postural limitations. I believe the ALJ was saying and what the regulation is saying is that sedentary work does not involve sufficient postural movement that you need to accommodate it additionally. So it's not that the ALJ said, oh, I don't have to worry about his postural limitations as if they are not there. It is that sedentary work does not require enough postural movement that I need to address it any further than simply limiting this person to sedentary work. So this court has already cited in other cases that this type of evidence is relevant to a claim of debilitating back pain. Then the question becomes, is it such evidence that a reasonable mind might consider is adequate to support a conclusion? And here, this court conducts a de novo review of these cases. But if you wanted to look for a perhaps reasonable mind that looked at this very specific bucket of evidence and concluded that it was sufficient to support the residual functional capacity finding, I would direct the court to magistrate judge's ruling. Cases that come up to this level of court don't always tee up so perfectly where the district court has addressed the facts at issue and then concluded that they are indeed substantial evidence. This case, however, does. And the commissioner would argue that that is persuasive evidence that the substantial evidence standard has been met here. The ALJ is not required to call a medical expert. It is the ALJ and the ALJ alone that determines the residual functional capacity assessment. So that the ALJ called an expert and then concluded that that expert was not sufficiently prepared does not mean that the ALJ is required to call another expert. It doesn't mean that the ALJ has to somehow rely on that expert. It means simply that the ALJ, if there is sufficient evidence to reach a decision, can reach such a decision and that's what happened here. In terms of the subjective symptoms analysis, the ALJ applied the correct standard. The ALJ cited the correct standard in the decision. Wolven has pulled some language from the ALJ's decision where the ALJ was talking about making observations about the evidence and argues that that is the standard that the ALJ applied. That language that the ALJ used, which was that the evidence failed to fully substantiate, fully, Wolven's subjective symptoms, was not something the ALJ said, okay, and this is the standard. Plus, if the ALJ really required that the evidence fully substantiate the subjective symptoms and found that they didn't, again, he would have thrown them out and found that Wolven could do heavy work. But that's not what happened. Substantial evidence supports the ALJ's decision here. It's a question of weighing the evidence, and the ALJ weighed all the evidence. Accordingly, the decision should be affirmed. If there are no further questions, the commissioner will rest. Thank you very much, counsel. The case is taken under advisement and the court will be in recess.